FILED by _RGS_ D.C

NOV 0 4 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

SEAMILES, LLC
a Florida limited liability company,

09-23382

Plaintiff,

v.

CARNIVAL CORPORATION
f/k/a CARNIVAL CRUISE LINE, INC.,
a Panama Corporation,
BARCLAYS BANK DELAWARE, f/k/a
JUNIPER BANK, a Delaware corporation.

CIV-UNGARO

MAGISTRATE JUDGE
SIMONTON

Defendants.

_____/

## COMPLAINT

Plaintiff SEAMILES, LLC ("SeaMiles"), by and through its undersigned attorneys, sues Defendants CARNIVAL CORPORATION ("CCL"), and BARCLAYS BANK DELAWARE f/k/a JUNIPER BANK ("Juniper"), and states:

### NATURE OF ACTION

1.      This is an action by a service provider against its partners in a joint venture bound by various agreements. The suit is for *inter alia*, injunctive relief, trademark infringement, false designation of origin, trademark dilution, unfair competition, breach of contract, tortious interference, violation of the Florida Unfair and Deceptive Trade Practices Act, civil conspiracy, and declaratory relief.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a)(3). There is complete diversity of citizenship among the parties, and the amount in

controversy exceeds the sum of $75,000.00, exclusive of interest, costs and attorneys' fees.

3.    This Court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. §1116 (injunctive relief necessary to prevent a violation under the Lanham Act), 15 U.S.C. § 1121 (claims under the Lanham Act), 28 U.S.C. §1331 (claims arising under the laws of the United States), 28 U.S.C. §1338(b) (pendant unfair competition claims) and 28 U.S.C. §1367 (supplemental jurisdiction).  SeaMiles also seeks declaratory relief pursuant to 8 U.S.C. § 2201 (declaratory relief).

4.    This Court has personal jurisdiction over Defendants under §48.193(2)(a), Fla. Stat. because they are engaged in substantial and not isolated business activity in the State of Florida, maintain offices in Florida, signed contracts in Florida, have offered services and goods into the State of Florida, and have committed tortious acts within Florida.

5.    Venue is proper under 28 U.S.C. §§1391(b) and (c), because a substantial part of the events giving rise to the instant claim occurred in this District, and because the corporate Defendants are subject to the personal jurisdiction of this Court and therefore deemed to "reside" in this District for purposes of venue.

## THE PARTIES

6.    Plaintiff SeaMiles is a limited liability company organized and existing under the laws of the State of Florida.

7.    Upon information and belief, Defendant CCL is a corporation organized and existing under the laws of the Republic of Panama, having its principal place of business at 3655 NW 87th Ave, MLGL815, Miami, Fl 33178-2428.  Upon information and belief, its registered agent for service of process is Perez Arnaldo, at the same address.

2

8.     Defendant Juniper is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business at 100 S. West St. Wilmington, DE 19801.

## RELEVANT FACTS

### A.     *SeaMiles and the SEAMILES® Mark*

9.     SeaMiles is a Florida limited liability company with fewer than ten employees dedicated to promoting and marketing consumer products and services to cruise passengers. SeaMiles is the owner of the intellectual property at issue in this case.

10.    In the early 2000's, SeaMiles developed a business model for a co-branded credit card between SeaMiles and a cruise line. Consumers could earn SeaMiles travel points which could be redeemed for cruise and travel credit with multiple cruise lines, airlines, and hotel stays or other travel rewards that SeaMiles offered.

11.    This business model and its related revenue structure were unique in the industry at the time in several aspects: miles earned with the card could be redeemed on any cruise line, the credit card application was promoted and processed on board the vessel by SeaMiles personnel, and the credit card issuer approved or denied the credit application instantly (the "SeaMiles Business Model").

12.    SeaMiles is also the owner of common law rights and federal trademark registrations in a word mark comprising the term SEA MILES®:

| Registered Mark | Registration No., Services and Date of Registration |
| --- | --- |
| SEA MILES | 2914829 (Consumer incentive program based on promoting the services of others, such services being retail of goods and services, cruise and air travel, hotel accommodations, and car rentals by awarding gift certificates) December 28, 2004 |

SEA MILES                     3106933  (Financial affairs, namely credit card services)
                              June 20, 2006

SEA MILES                     3106935  (Promoting the sale of credit card accounts through
                              the administration of incentive award and gift certificate
                              programs; promoting the sale of the goods and services of
                              others by awarding reward points and gift certificates)
                              June 20, 2006

These registrations are valid and subsisting, unrevoked and uncancelled.  This mark is referred to herein as the "SEAMILES® Mark".[1]

13.     At all times relevant to this action, SeaMiles owned all right, title and interest in the SEAMILES® Mark and associated goodwill.  SeaMiles and/or its predecessors and licensees have been using the SEAMILES® Mark continuously in interstate commerce in relation to services related to the SeaMiles Business Model since at least as early as 2002, and have displayed the SEAMILES® Mark with the letter "R" enclosed within a circle or with the words "Reg. U.S. Pat & Tm. Off." or "Registered in U.S. Patent and Trademark Office".

14.     SeaMiles and its licensees have spent significant sums of money advertising, promoting, and offering services featuring the SEAMILES® Mark over the years, creating a consumer demand for such services throughout the United States and abroad.  Consequently, the SEAMILES® Mark has become widely known and accepted.

15.     Over the many years that SeaMiles has used and licensed the SEAMILES® Mark, SeaMiles and their licensees have expended substantial sums in advertising and promotion through various media of its services under the mark.  The SEAMILES® Mark has been prominently displayed in all of this advertising.

16.     SeaMiles has carefully cultivated the SEAMILES® brand, ensuring that the

---

[1] The SEAMILES Mark® is also used internationally and is registered in the European Union (European Reg. No. 2933661)

4

services offered under the mark adhere to the highest standards of quality.

17.     The SEAMILES® Mark has become famous as a result of its distinctiveness; the duration and extent of its use in interstate commerce; the duration and extent of the advertising and publicity utilized to establish and support it; the geographical extent of the trading area in which it is used; the channels of trade for the services with which it is used; the degree of recognition of the SEAMILES® Mark in the trading areas and channels of trade in which it is used; the insubstantial — if not non-existent — nature and extent of the use of marks similar to the SEAMILES® Mark in connection with services offered by third parties; and the registration of the SEAMILES® Mark for services on the Principal Register.

18.     As a result of this long and continuous use, the SEAMILES® Mark has come to identify services associated with SeaMiles and distinguish them from those of others, and has come to represent and symbolize to the consumer that the services in connection with which the SEAMILES® Mark appears adhere to standards of the highest quality.  As a result, SeaMiles has established substantial goodwill in the SeaMiles® Mark, which is now a valuable asset of SeaMiles.

### B.     *The Defendants.*

19.     CCL operates one of the world's largest ocean cruise lines.  Together with its parent companies and affiliates, CCL's group of related companies controls approximately 60% of the international cruise market.

20.     Headquartered in Miami, Florida, U.S.A. and London, England, CCL operates a fleet of 92 ships, with another 13 ships scheduled for delivery between now and 2012. There are an average of 225,000 people sailing aboard the CCL fleet at any given time, including approximately 65,000 shipboard employees.

21.    Juniper is a Delaware corporation and one of the largest issuers of credit cards in the country.  Juniper is part of Barclay's PLC, a global British financial services firm operating on every continent except Antarctica. Barclay's PLC was ranked as the 25th largest company in the world by Forbes Global 2000 (2008 list) and the fourth largest financial services provider in the world by Tier 1 capital ($32.5 billion).

### C.    The SeaMiles Business Model and the NDA

22.    In 2002, SeaMiles approached CCL with the idea of producing and marketing an ocean cruise travel reward card that followed the unique and novel SeaMiles Business Model.

23.    CCL was very interested in the SeaMiles Business Model because it had previously participated in a CCL-only rewards card program through two different credit card issuers which were complete financial failures.

24.    Under the SeaMiles Business Model:

   a.   The partner card issuer provides the credit cards and financing;

   b.   The partner cruise line would provide access to its vessels and customers;

   c.   SeaMiles would provide its brand and points earning and redemption program;

   d.   SeaMiles would promote the card and obtain new cardholders through an on-line website, magazine advertising, direct mail, trade shows and on board the vessels;

   e.   SeaMiles would place personnel aboard the partner cruise lines' vessels to promote and sell the cards  (SeaMiles ended up doing this at its own expense and paying CCL for the travel expenses of SeaMiles sales personnel);

6

    f.  Credit application for potential card holders would be reviewed by the partner card issuer and approved instantly so that the consumer could immediately begin using the card and accumulating SeaMiles points;

    g.  SeaMiles points could be redeemed on any cruise line, not just the partner cruise line  (this remains the only cruise loyalty program in the industry that allows redemption on any cruise line hence the tag line for the SeaMiles credit card "Any Cruise Line Any Time®");

    h.  The cards would be co-branded by SeaMiles, the partner cruise line and the partner card issuer.

25.    In August 2002, in order to pursue these discussions in a confidential and safe business environment, CCL and SeaMiles entered into a Mutual Non-Disclosure Agreement (the "NDA"), prepared by CCL.

26.    The NDA prohibits disclosure **or use** of the confidential information by the non-disclosing party.  It defines sales methods and techniques, like the SeaMiles Business Model, as confidential information of each party.

27.    Furthermore, the NDA provides in paragraph 18 that the obligations contained in the agreement to not disclose **or use** this information shall "survive and continue in full force and effect **. . . indefinitely with respect to technical Confidential Information**" (emphasis added).

28.    Throughout 2002 and 2003, SeaMiles circulated a request for proposal to various credit card issuers and eventually began to develop and document the financial arrangements for the issuance of a SeaMiles credit card with Bank One.

29.    In 2004, SeaMiles approached Juniper[2] to determine its interest in issuing the

---

[2]  All of the agreements refer to Juniper Bank which was subsequently renamed to Barclays.  Accordingly, this entity is referred to as "Juniper" throughout the Complaint for the sake of clarity.

SeaMiles credit card.   Juniper was very interested in the SeaMiles Business Model, and particularly the instant credit component.   After a substantial effort by Juniper to get the business, SeaMiles agreed to abandon its plans with Bank One and instead to go with Juniper.

30.     CCL initially did not want to work with Juniper, then a relative unknown credit card issuer.

31.     SeaMiles, through much effort, eventually persuaded CCL to accept Juniper as the issuer of the co-branded CCL-SeaMiles credit card.

### D.     The Tri-Party Agreement

32.     The negotiations among CCL, Juniper and SeaMiles continued for several months and resulted in the execution of a Sea-Miles Co-Branded Credit Card Agreement among CCL, Juniper and SeaMiles dated November 24, 2004. (the "Tri-Party Agreement").

33.     The Tri-Party Agreement recognizes in its second recital clause that SeaMiles is the "**creator**, owner, and operator of the SeaMiles cruise and travel rewards program" (emphasis added).

34.     Paragraph 19 of the Tri-Party Agreement creates a bilateral non-compete restriction whereby CCL and SeaMiles agreed that neither of them shall:

> during the Term of this Agreement (including any renewal term) **and for a period of one (1) year following the termination of this Agreement** for any reason whatsoever, offer any co-branded credit card product to any CCL-SeaMiles or SeaMiles Generic Card holders, provided that nothing herein shall be construed to prevent CCL or SeaMiles from offering the Program, another credit card product or credit card product related product or service **if the offer did not include credit card membership as a criteria** in selecting the recipients of the offer.

(emphasis added).

35.     Pursuant to this non-compete clause, upon termination of the Tri-Party Agreement, SeaMiles and CCL can offer a rewards card to their members, but the new card

cannot be co-branded with a credit card and credit card membership cannot be part of the criteria of membership.

### E.     The Two-Party Agreement

36.     Despite the Tri-Party Agreement, CCL was concerned about having the ability to pursue other options should Juniper fail to properly support the program or, worse, try to circumvent CCL. Furthermore, SeaMiles agreed to share the revenues that it was receiving from Juniper with CCL in exchange for the exclusive protection of its SeaMiles Business Model and other intellectual property. As a result, on July 28, 2005, CCL and SeaMiles executed a separate Co-Branded Credit Card Agreement (the "Two-Party Agreement").

37.     The Two-Party Agreement, as between SeaMiles and CCL, incorporates and supersedes any inconsistent clauses in the Tri-Party Agreement (paragraph 2) and the NDA (paragraph 10.A).

38.     As in the Tri-Party Agreement, the Two-Party Agreement, at the very outset, recognizes SeaMiles' ownership of the SeaMiles Business Model and program:

> WHEREAS, SeaMiles is the owner and operator of credit card/travel rewards programs desiring to enter into an agreement with CCL to offer and issue a co-branded SeaMiles-CCL credit card to qualifying U.S. resident consumers through a credit card issuing bank (hereinafter, the "Program," and as more fully described in Section 1.A below)

39.     The Program is then further defined in the Two-Party Agreement as:

> Under the Program, approved Card applicants (the "Card Member(s)") will earn travel reward points ("Points") by charging purchases to the Card, or by making balance transfers or other approved transactions in connection with the Card. SeaMiles will enter into an agreement with Our Vacation Store, Inc. ("OVS" or the "Fulfillment Center") to serve as the travel fulfillment center to redeem cruises and other travel products in exchange for Card Member Points (the "Fulfillment Center Agreement"). Card Points shall be redeemable by Card Members in exchange for cruise vacations and other benefits, as mutually agreed upon by the Parties, subject to the Program's Card Points redemption platform ("Redemption

9

Platform"), attached hereto as Exhibit C-1, attached and incorporated into this Agreement, as well as market and industry-related fluctuations.

40.     Paragraph 10.A of the Two-Party Agreement, which adopts the NDA, expands the coverage of the NDA by adding to the SeaMiles confidential information:

> all of its trade secrets, know-how, business strategies, marketing information, technical information, **Program concept and other** proprietary **information of SeaMiles, including account and business information, business planning**, operations and objectives, cost and processing information…

(emphasis added).

41.     A key term of the Two-Party Agreement was an acknowledgment by CCL in exchange for SeaMiles' promise to invest the capital required to make the CCL-SeaMiles co-branded card a success that the methodology, model and other elements of the program belonged exclusively to SeaMiles and could, therefore, not be appropriated by CCL. This was memorialized in paragraph 14 which states:

> Notwithstanding any other provision in this Agreement to the contrary, the SeaMiles' Marks and all intellectual property rights, software copyrights, operational documentation, website content and code, **business models**, trade dress, formulas, **methodology**, **revenue models**, and all other creative and **conceptual aspects of the Program** developed by SeaMiles **are and shall always be deemed the exclusive property of SeaMiles**, except to the extent any such materials, or creative or conceptual aspects of the Program include all or a portion of any CCL Mark.

(emphasis added).

## F.     *Despite Success, Problems Arise through Defendants' Conduct*

42.     In order to effectuate the various agreements between the parties, SeaMiles, at its own expense, placed salespersons on the CCL ships.  Room and board was not provided on a complimentary basis by CCL.  In fact, SeaMiles bought guest cabins aboard the vessels for its salespeople to recruit customers for the program.  In other words, SeaMiles paid for all expenses incurred in recruiting new SeaMiles customers aboard the CCL ships.

43.     These salespersons would explain the program to passengers, would prepare the necessary forms to enroll new members in the program, and would seek instant credit approval from Juniper for those passengers who applied.

44.     In addition, SeaMiles maintained an on-line site that promoted the program and signed up card holders.

45.     The SeaMiles card was a huge success.  During the following years, consumers rang up billions of dollars of sales on the co-branded card, resulting in over $100 million in revenues to the parties.

46.     In 2006 and 2007, problems surfaced when it was discovered that Juniper was:

    a.  Contacting other cruise lines regarding programs competitive with the SeaMiles Business Model in violation of the express and implied terms of the contracts between the parties.

    b.  Using the SeaMiles trademark and trade dress to promote the creation of competitive programs.

    c.  Shortchanging SeaMiles in its profit sharing calculation.

47.     The parties entered and continue a process of negotiation and discussion regarding these issues.  To this day, however, the profit sharing dispute remains unresolved.

48.     On December 1, 2007, Juniper, CCL and SeaMiles executed a Second Amendment to the Tri-Party Agreement, and on December 7, 2007, Juniper and SeaMiles executed a Marketing Agreement.[3]  These agreements came at the end of a year where SeaMiles almost sued Juniper for various contract violations involving improper discussions with third-parties as well money-related issues and where CCL participated with Juniper in violations of the exclusivity and confidentiality provisions of the Tri-Party Agreement.

---

[3] The Tri-Party Agreement was first amended but that amendment is not relevant to the issues in controversy.

49.     Unbeknownst to SeaMiles, Juniper and CCL subsequently began to negotiate their own scheme to get rid of SeaMiles and to steal its SeaMiles Business Model and card holders.

50.     In May of 2009, SeaMiles learned that CCL was approaching SeaMiles' personnel aboard vessels and soliciting them to go work for CCL.

51.     SeaMiles demanded that CCL cease such conduct.

### G.     Termination Notice and Accusations of Breach

52.     On June 5, 2009, CCL notified Juniper and SeaMiles by a letter that was inexplicably dated June 12, 2009, that it intended to not renew the Tri-Party Agreement.

53.     On July 30, 2009, CCL sent SeaMiles a letter falsely claiming that SeaMiles was in default under the Two-Party Agreement.

54.     Over the following months, SeaMiles tried to work out a protocol for termination and transition which failed as it became increasingly obvious that CCL was planning to act in concert with Juniper and disregard SeaMiles' concerns.

55.     On August 12, 2009, unbeknownst to SeaMiles, CCL registered the following Internet domain names:

> carnival-funpoints.com
> carnival-funpoints.net
> carnivalfun-points.com
> carnivalfun-points.net
> carnivalfunpoint.com
> carnivalfunpoint.net
> carnivalfunpoints.com
> carnivalfunpoints.net
> fun-points.com
> fun-points.net
> mycarnival-funpoints.com
> mycarnival-funpoints.net
> mycarnivalfunpoint.com
> mycarnivalfunpoint.net

mycarnivalfunpoints.com
mycarnivalfunpoints.net[4]

56.     On October 8, 2009, CCL sent SeaMiles a second letter wrongfully asserting breach by SeaMiles and informing SeaMiles that CCL had elected to terminate the Two-Party Agreement at the same time as the Tri-Party Agreement.

57.     The Tri-Party Agreement requires that a mutually agreed letter be sent to cardholders regarding termination.  On or about October 9, 2009, CCL sent SeaMiles a proposed transition letter which showed that CCL and Juniper intended to appropriate to themselves all of the SeaMiles card holders, including those acquired exclusively by SeaMiles, to a new CCL/Juniper co-branded card.

58.     The proposed transition letter specifically stated:

> On December 15, 2009, the relationship between Carnival and SeaMiles will end.  As a result, your current card will be replaced with a new Carnival MasterCard with FunPoints. This will be a seamless transition for you:
>
> • **Your account number will remain the same**.
>
> • Your **unredeemed SeaMiles will be automatically converted to FunPoints** on your new Carnival MasterCard
>
> • You will continue to earn rewards on every purchase you make with your card.
>
> Plus, with your new Carnival MasterCard, you will be able to redeem your FunPoints for cruises, onboard gifts and air travel... The possibilities are endless!

(emphasis added).  In subsequent communications with each of CCL and Juniper, they have repeatedly stated their intention upon termination to send this new CCL/Juniper co-branded card to the SeaMiles cardholders.

---

[4]  CCL has previously used Funpoints to identify a program for groups and not a credit card related rewards program.

59. This specifically violates CCL's commitment to refrain offering a co-branded credit card program for a period of a year after termination of the agreement.

60. Moreover, this communication creates confusion in the minds of the consumer as to the card since it creates the impression that Defendants' new card is the same as the SeaMiles card using the same points, numbers and members and merely changing the names. By so doing, CCL and Juniper seek to steal the goodwill that the SeaMiles card has earned with the public.

61. When SeaMiles reminded CCL and Juniper regarding their mutual obligations, counsel for Juniper indicated that he had been authorized by CCL to try to negotiate a solution between the parties.

62. On numerous occasions, SeaMiles explained to CCL that this conduct was unacceptable.

63. CCL and Juniper have repeatedly refused to abandon their plans.

64. In particular, CCL and Juniper have confirmed that they intend to convert all Carnival SeaMiles account holders to a CCL co-branded card.

65. CCL and Juniper have also indicated that they intend to solicit the full membership database including those customers acquired exclusively by SeaMiles.

66. CCL has specifically refused to confirm that it will not steal the SeaMiles Business Model in violation of the Two-Party agreement and the NDA.

67. Based on the Two-Party Agreement, CCL may not offer a co-branded travel reward card because that would violate SeaMiles' rights to the SeaMiles Business Model.

68. CCL has refused to commit to the destruction of all of the co-branded promotional materials used aboard its vessels even though the old co-branded card is no longer being actively promoted.

69.     Recently, SeaMiles discovered that Defendants are using the internet domain name www.carnivalseamiles.com to redirect consumers to Juniper's website located at the URL https://www.barclaycardus.com/app/ccsite/action/home.

70.     According to the public WHOIS database, the carnivalseamiles.com domain is owned and controlled by CCL.

71.     Once on the Juniper web site, CCL and Juniper promote Defendants' new Carnival "FunPoints" co-branded card in connection with a description of the current SeaMiles co-branded card, as shown in the two examples below, thereby creating the impression in consumers' minds that it is a mere continuation of the SeaMiles program and that the programs are one and the same:





(arrows not in original).

72.     All conditions precedent to the bringing of this suit have been satisfied or waived by the parties.

73.     SeaMiles has retained the undersigned law firm to represent them in this action and is obligated to pay it a reasonable fee for their services.

## COUNT I

### INJUNCTIVE RELIEF (against all Defendants)

74.     The allegations contained in paragraphs 1 through 73 are hereby re-alleged as if fully set forth herein.

75.     This is a claim by SeaMiles to obtain an injunction pursuant to § 34 of the Lanham Act (15 U.S.C. § 1116), Fla. Stat. § 501.211, and the Court's inherent equitable power to enjoin the wrongful acts complained of herein as well as other wrongful acts threatened but not yet committed by Defendants.

76.     Upon information and belief, CCL has engaged in or, expressed an intention to engage in, or has attempted to engage in: (a) direct and/or contributory infringement of the federally-registered SEAMILES® mark; (b) direct and/or contributory false designation of origin in violation of § 43 of the Lanham Act (15 U.S.C. § 1125); (c) direct and/or contributory trademark dilution in violation of § 43 of the Lanham Act (15 U.S.C. § 1125; (d) direct and/or contributory common law unfair competition; (e) breach of contracts, particularly with respect to restrictive covenants against duplicating the proprietary SeaMiles Business model and against competing for a period of time after termination of the agreements; (f) tortious interference with SeaMiles' contractual and business relationships with its customers and shipboard SeaMiles personnel; (g) violations of the Florida Deceptive and Unfair Trade Practices Act; and (h) conspiracy to commit the above-listed offenses, all described more fully herein.

77.     Upon information and belief, Juniper has engaged in or, expressed an intention to engage in, or has attempted to engage in: (a) direct and/or contributory infringement of the federally-registered SEAMILES® mark; (b) direct and/or contributory false designation of origin in violation of § 43 of the Lanham Act (15 U.S.C. § 1125); (c) direct and/or contributory trademark dilution in violation of violation of § 43 of the Lanham Act (15 U.S.C. § 1125; (d) direct and/or contributory common law unfair competition; (e) tortious interference with SeaMiles' contractual and business relationships with CCL with respect to the Two-Party Agreement; (f) violations of the Florida Deceptive and Unfair Trade Practices Act; and (g) conspiracy to commit the above-listed offenses, all described more fully herein.

78.     By such wrongful acts, Defendants will and would cause, unless restrained by the Court, irreparable injury and damage to SeaMiles and to the goodwill associated with SeaMiles' trademark, including diversion of customers from SeaMiles resulting in lost sales and lost profits, and the consequent unjust enrichment of Defendants.

79.     SeaMiles does not have an adequate remedy at law.

## COUNT II

### DIRECT AND/OR CONTRIBUTORY INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK
### (against all Defendants)

80.     The allegations contained in paragraphs 1 through 73 are hereby re-alleged as if fully set forth herein.

81.     SeaMiles is the owner of federal trademark registrations for the SEAMILES® Mark.

82.     By its rights to the registration, and extensive use and promotion of, the SEAMILES® Mark, SeaMiles has established a strong association in the public mind between

the SEAMILES® Mark and the services offered by SeaMiles.

83.    Without SeaMiles' authorization or consent, Defendants have used the SEAMILES® Mark and/or marks that are confusingly similar to the SEAMILES® Mark, to promote and generate publicity for Defendants' "FunPoints" program.

84.    Defendants' acts of offering their "FunPoints" program using the SEAMILES® Mark, or assisting in the same, have, upon information and belief, caused actual confusion, mistake and deception among relevant consumers as to endorsement and sponsorship of Defendants' "FunPoints" program and have deceived the relevant public into believing that Defendants' "FunPoints" program is associated with or are otherwise endorsed, sponsored or authorized by SeaMiles, all to the damage and detriment of SeaMiles' reputation, goodwill and sales.

85.    Defendants' unlawful acts constitute trademark infringement or contributory trademark infringement, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114

86.    Upon information and belief, Defendants' acts have been willful, deliberate and intended to benefit Defendants at SeaMiles' expense.

87.    SeaMiles has suffered monetary damages as a result of Defendants' unlawful acts in an amount to be calculated.

88.    This is an exceptional case under 15 U.S.C. § 1117.

## COUNT III

### DIRECT AND/OR CONTRIBUTORY FALSE DESIGNATION OF ORIGIN
### (against all Defendants)

89.    The allegations contained in paragraphs 1 through 73 are hereby re-alleged as if fully set forth herein.

90.    Defendants' use of the SEAMILES® Mark on and in relation to Defendants'

"FunPoints" program constitutes unfair competition, passing off and false designation of the origin as to the services made available by Defendants, as well as false designation as to sponsorship, which causes irreparable injury to SeaMiles, in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

91.     Defendants' assistance in such acts constitutes contributory unfair competition, passing off and false designation of the origin as to Defendants' "FunPoints" program, as well as false designation as to sponsorship, which causes irreparable injury to SeaMiles, in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

92.     Upon information and belief, Defendants' acts have been willful, deliberate and intended to benefit Defendants at SeaMiles' expense.

93.     SeaMiles has suffered monetary damages as a result of Defendants' unlawful acts in an amount to be calculated.

94.     This is an exceptional case under 15 U.S.C. § 1117.

### COUNT IV

### DIRECT AND/OR CONTRIBUTORY TRADEMARK DILUTION
### (against all Defendants)

95.     The allegations contained in paragraphs 1 through 73 are hereby re-alleged as if fully set forth herein.

96.     The actions of Defendants as described herein have diluted the reputation and value of SeaMiles' famous SEAMILES® Mark through their false and misleading advertising and representation that the Defendants' "FunPoints" program is associated with or endorsed by SeaMiles.

97.     Defendants, in connection with promotion and advertising of Defendants' "FunPoints" program, have used in interstate commerce the words, terms, names, symbols or any

combinations thereof related to SeaMiles' famous SEAMILES® Mark.

98.    Defendants' conduct was willfully intended to tarnish the reputation and value of SeaMiles' famous SEAMILES® Mark.

99.    Defendants' violations of the Lanham Act have damaged SeaMiles and will continue to damage SeaMiles unless enjoined by the Court.

100.    SeaMiles has suffered monetary damages as a result of Defendants' unlawful acts in an amount to be calculated.

101.    This is an exceptional case under 15 U.S.C. § 1117.

**COUNT V**

**DIRECT AND/OR CONTRIBUTORY COMMON LAW UNFAIR COMPETITION**
**(against all Defendants)**

102.    The allegations contained in paragraphs 1 through 73 are hereby re-alleged as if fully set forth herein.

103.    This is an action for unfair competition against all Defendants.

104.    Upon information and belief, Defendants have competed unfairly with SeaMiles by using the SEAMILES® Mark on and in relation to Defendants' "FunPoints" program, or have assisted in such acts.

105.    Upon information and belief, Defendants' acts of unfair competition have been willful, intentional, and malicious.

106.    As a direct and proximate result of this unfair competition, SeaMiles has suffered damages in an amount to be calculated and is threatened with irreparable injury.

## COUNT VI

### BREACH OF CONTRACT
### (against CCL)

107.   The allegations contained in paragraphs 1 through 73 are hereby re-alleged as if fully set forth herein.

108.   The Two-Party Agreement which, as to CCL, incorporates all contracts which preceded it, except to the extent that they are inconsistent, including the NDA, is a valid and binding contract.

109.   As alleged more fully above, CCL has breached the Two-Party Agreement and the NDA.

110.   As a direct and approximate result of these breaches, SeaMiles has suffered or will suffer damages in an amount to be calculated.

## COUNT VII

### TORTIOUS INTERFERENCE
### WITH A CONTRACTUAL RIGHT
### (Against Juniper)

111.   The allegations contained in paragraphs 1 through 73 are hereby re-alleged as if fully set forth herein.

112.   The Two-Party Agreement and the NDA are contracts that exist between SeaMiles and CCL.

113.   Upon information and belief, Juniper had knowledge of these contracts.

114.   As described above, upon information and belief, these contracts have been or are about to be breached or terminated by CCL.

115.   Upon information and belief, Juniper intentionally procured CCL's breaches and terminations without justification or privilege.

116.   As a direct and proximate result of the foregoing, SeaMiles has suffered and will suffer damages in an amount to be calculated.

## COUNT VIII

### TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS RELATIONSHIP
(Against Juniper)

117.   The allegations contained in paragraphs 1 through 73 are hereby re-alleged as if fully set forth herein.

118.   A business relationship exists between SeaMiles and CCL with respect to the SeaMiles Business Model.

119.   Upon information and belief, Juniper had knowledge of this business relationship.

120.   Upon information and belief, Juniper intentionally and unjustifiably interfered with this relationship.

121.   As a direct and proximate result of the foregoing, SeaMiles has suffered and will suffer damages in an amount to be calculated.

## COUNT IX

### TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS RELATIONSHIP
(Against CCL)

122.   The allegations contained in paragraphs 1 through 73 are hereby re-alleged as if fully set forth herein.

123.   A business relationship exists between SeaMiles and Juniper with respect to the SeaMiles Business Model.

124.   Upon information and belief, CCL had knowledge of this business relationship.

125.    Upon information and belief, CCL intentionally and unjustifiably interfered with this relationship.

126.    As a direct and proximate result of the foregoing, SeaMiles has suffered and will suffer damages in an amount to be calculated.

**COUNT X**

**VIOLATION OF FLORIDA DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT
[FLORIDA STATUTES § 501.201, *ET. SEQ.*]**
**(Against all Defendants)**

127.    The allegations contained in paragraphs 1 through 73 are hereby re-alleged as if fully set forth herein.

128.    This is a claim for violation of the Florida Deceptive Trade Practices Act (Florida Statutes §§ 501.*201 et seq.*)

129.    Defendants' conduct as described herein constitutes unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of Fla. Stat. § 501.204.

130.    Defendants knew or should have known that their conduct was unfair or deceptive or prohibited.

131.    Defendants' use of such unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce has been and is therefore willful.

132.    As a result of Defendants' use of such unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, SeaMiles has suffered and will suffer damages in an amount to be calculated.

## COUNT XI

### CIVIL CONSPIRACY
**(Against All Defendants)**

133.   The allegations contained in paragraphs 1 through 73 are hereby re-alleged as if fully set forth herein.

134.   As alleged more fully above, upon information and belief, Defendants have conspired to do unlawful acts or to do lawful acts by unlawful means.

135.   As a direct and proximate result of this conspiracy and the acts done in furtherance of it, SeaMiles has suffered and will suffer damages in an amount to be calculated.

### COUNT XII

### DECLARATORY JUDGMENT
**(Against CCL)**

136.   The allegations contained in paragraphs 1 through 73 are hereby re-alleged as if fully set forth herein.

137.   This is an action for declaratory relief under 28 U.S.C. § 2201, *et seq* .

138.   SeaMiles is the owner of the SeaMiles Business Model.

139.   As a result of CCL's conduct and representations, an actual justiciable case or controversy exists between the parties as to whether Defendants may appropriate the SeaMiles Business Model to their own ends or whether SeaMiles possessed a right to exclude Defendants from utilizing the SeaMiles Business Model.

140.   Furthermore, even if CCL were to exclude Seamiles Business Model, revenue model and other intellectual property from its purported program, as a result of Defendants' conduct and representations, an actual justiciable case or controversy exists between the parties as to whether Defendants may offer a co-branded travel rewards card for a period of one year

after termination of the agreements between the parties.

141.    If this Court declares that SeaMiles has an enforceable right to the SeaMiles Business Model as applied to Defendants, then Defendant should be enjoined from further use of the SeaMiles Business Model.  Absent an injunction, SeaMiles would suffer irreparable harm from such activity and would not have an adequate remedy at law.

WHEREFORE, SeaMiles respectfully requests:

(1)    That a preliminary and permanent injunction issue, restraining Defendants, their agents, servants, employees, successors and assigns, and all others in concert and privity with them from:

(a)    Directly or indirectly employing the SeaMiles Business Model or any similar business model including the offering of a co-branded travel rewards card;

(b)    Using a trademark, service mark or trade name, that comprises in whole or in part the term "SEA MILES" or any other substantially similar term which is likely to cause confusion with any of the trademarks or trade names owned and used by SeaMiles;

(c)    Directly or indirectly falsely suggesting any connection between their services and SeaMiles;

(d)    Directly or indirectly unfairly competing with SeaMiles;

(e)    Directly or indirectly conditioning any business dealings with others upon their refusal to deal with SeaMiles;

(f)    Directly or indirectly tortiously interfering with SeaMiles' contracts or business relationships;

25

(g)     Directly or indirectly using or disclosing SeaMiles' proprietary and confidential business information;

(h)     Directly or indirectly soliciting any of SeaMiles' personnel for employment with Defendants; or

(i)     Conspiring to do any of (a) through (h).

(2)     That Defendants be required to surrender for destruction all promotional materials bearing the SEAMILES® Mark.

(3)     That Defendants be enjoined from making any statements which disparage SeaMiles and/or SeaMiles' services.

(4)     That Defendants be required to pay all damages allowed by law including any enhanced damages and prejudgment interest allowed by statute.

(5)     That Defendants be required to pay SeaMiles' attorneys' fees, together with costs of this suit, pursuant to 15 U.S.C. § 1117  and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.2105.

(6)     A declaratory judgment that Defendants' acts or practices violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq.

(7)     A declaratory judgment that SeaMiles possesses a property right in the SeaMiles Business Model as applied to Defendants.

(8)     For such other and further relief as may be just and equitable.

## DEMAND FOR TRIAL BY JURY

SeaMiles demands trial by jury for all issues so triable as a matter of law.

Respectfully submitted,

Dated:  November 4, 2009

By: _____

Jorge Espinosa, Esq.
Florida Bar No.  779032
Jespinosa@etlaw.com
Michael Tschupp, Esq.
Florida Bar No. 34656
ESPINOSA|TRUEBA PL
3001 SW 3rd Ave.
Miami, Florida  33129
Tel:  305-773-3450
Fax:  305-285-5555

*Attorneys for Plaintiff*

JS 44
(Rev. 12/96)

# 09-23382

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| | |
|---|---|
| **1.(a) PLAINTIFFS** SEAMILES, LLC, a Florida limited liability company | **DEFENDANTS-** CARNIVAL CORPORATION f/k/a CARNIVAL CRUISE LINE, INC., BARCLAYS BANK DELAWARE, f/k/a JUNIPER BANK |
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF<br>Miami-Dade<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) 305-854-0900<br>Jorge Espinosa, Espinosa Trueba PL<br>3001 S.W. 3rd Avenue, Miami, FL  33129 | ATTORNEYS (IF KNOWN)<br><br>FILED by RCS D.C.<br>NOV 04 2009<br>STEVEN M. LARIMORE<br>CLERK U.S. DISTRICT<br>S.D. OF FLA. MIAMI |

(d) CIRCLE COUNTY WHERE ACTION AROSE: **DADE** MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

**CV-UNGARO**

**MAGISTRATE JUDGE SIMONTON**

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment |

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A. CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement f Judgment<br>☐ 151 Medicare Act<br>B☐ 152 Recovery of Defaulted Student Loans (Excl Veterans)<br>B☐ 153 Recovery of Overpayment of Veteran $ Benefits<br>☐ 160 Stockholders Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury – Med Malpractice<br>☐ 365 Personal Injury– Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | B☐ 610 Agriculture<br>B☐ 620 Other Food & Drug<br>B☐ 625 Drug Related Seizure of Property 21 USC 881<br>B☐ 630 Liquor Laws<br>B☐ 640 RR & Truck<br>B☐ 650 Airline Regs.<br>B☐ 660 Occupational Safety/ Health<br>B☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**A PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☒ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>B☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/ Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitution of the State Statutes<br>☐ 890 Other Statutory Actions<br>A OR B |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | **A LABOR** | **B SOCIAL SECURITY** | |
| ☐ 210 Land Condemnation<br>B☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | B☐ 510 Motions to Vacate Sentence<br>**HABEAS CORPUS**<br>☐ 530 General<br>A☐ 535 Death Penalty<br>B☐ 540 Mandamus & Other<br>B☐ 550 Civil Rights<br>B☐ 555 Prison Condition | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt Relations<br>☐ 730 Labor/Mgmt Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>A☐ 791 Empl Ret Inc. Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>A☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>A☐ 871 IRS – Third Party 26 USC 7609 | |

## V. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) -

15 U.S.C. § 1114; trademark infringement, false designation of origin; trademark dilution; unfair competition; breach of contract; tortious interference; FDUTPA; civil conspiracy; injunctive relief; declaratory judgment

LENGTH OF TRIAL<br>via 5 days (estimated for both sides to try entire case)

| VII. REQUESTED IN COMPLAINT | CHECK IF THIS IS A CLASS ACTION<br>☐ UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND: ☒ YES ☐ : NO |
|---|---|---|---|

**VIII. RELATED CASE(S)** (See Instructions):

| IF ANY | JUDGE | DOCKET NUMBER: |
|---|---|---|

DATE 11/4/2009  SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE ONLY
RECEIPT # 1011389  AMOUNT $ 350.00  APPLYING IFP  JUDGE  MAG JUDGE

11/04/09